# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 12, 2011

## KEITH EZELL v. STATE OF TENNESSEE

**Appeal from the Shelby County Criminal Court**
**No.  01-08323-34     John T. Fowlkes, Jr., Judge**

**No. W2010-00698-CCA-R3-PC - Filed June 30, 2011**

The Petitioner, Keith Ezell, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions for seven counts of especially aggravated kidnapping and four counts of aggravated robbery, for which he is serving an effective 198-year sentence.  He contends that his trial attorney failed to provide effective assistance because counsel did not advise him that accepting a guilty plea offer was in his best interest and did not accurately advise him of the likelihood he would receive a greater sentence after a trial than if he accepted the plea offer.  Upon review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER., JJ., joined.

Mary Peterson Kleinman (on appeal) and Matthew Ian John (at hearing), Memphis, Tennessee, for the appellant, Keith Ezell.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts of the Defendant's convictions were stated by this court on direct appeal:

> [Torrez Talley, Jevon Bryant, and the Petitioner's] convictions in this case originate from the commission of especially aggravated kidnapping and aggravated robbery offenses against victims Kimberly Hancock, Omar Coleman, Divin Wright, Oliver Wright, Jerome Carpenter, Tonyell Somerville, and Jodeci Somerville.[1]
>
> The proof presented at trial reflects that Kimberly Hancock was at her home on January 11, 2001, when she received a phone call from a friend requesting she come by and pick up some clothes. After receiving the call, she asked Divin Wright (her boyfriend), and Omar Coleman to accompany her. The group took Omar's white Ford Focus. Upon arrival at the house, Kimberly and Divin went inside to pick up the clothes while Omar waited outside in the car. Inside the house, Kimberly saw Defendant Talley, Thaddeus Brown, John Williams, and Jarvis Williams. As Kimberly proceeded upstairs, John Williams grabbed her by the neck and threw her down the stairs. He then picked her up from the floor, placed her on the couch, and proceeded to question her about her boyfriend's brother, Oliver Wright, whom John Williams believed orchestrated a break-in of his home. Divin was also forced to sit on the couch and questioned about the break-in. The group of men including Defendant Talley threatened to kill Kimberly and Divin if they did not tell them what they wanted to know. Divin was also told to remove his clothes. At this time, Kimberly saw that Defendant Talley and the Williams brothers had guns.
>
> After Kimberly and Divin were questioned for a few minutes, Thaddeus Brown and Defendant Talley went outside. According to Omar Coleman, he was approached by three armed men and brought into the house under the pretense that he was under arrest. He was then forced to take off his clothes, and his

_____

[1]In order to differentiate between the victims in this case, we refer to them by their first names.

checkbook, credit cards, and drivers license were taken. At this time, Defendant Bryant arrived at the house armed with two guns. Upon arrival, Defendant Bryant brandished his guns and exclaimed, "I want the bitch who set it up." Jarvis Williams told Kimberly that she was going to help find Oliver Wright. Jarvis Williams and Defendant Bryant then forced Kimberly into a black Ford Probe and left. After Jarvis Williams and Defendant Bryant left with Kimberly, Defendant Ezell entered the house wielding a shotgun. Defendants Ezell and Talley then proceeded to beat Divin with their fists and guns.

After Oliver Wright was located, Jarvis Williams called him on the phone and asked if he would pick him up and take him to Auto Zone to get a battery. Oliver agreed. Thereafter, Jarvis Williams and Defendant Bryant met up with Thaddeus Brown and Defendant Ezell. At this time, Kimberly was moved to the backseat of a purple Dodge Intrepid. Defendant Ezell also sat in the backseat, armed with a shotgun. Later, Oliver arrived in a Dodge Neon accompanied by Jerome Carpenter, Tonyell Somerville (Oliver's girlfriend), and Jodeci Somerville (Tonyell's seven-year-old son). When Oliver and company arrived, Oliver got out of the car. Immediately, Defendants Bryant and Ezell, armed with guns, walked to Oliver's car and told him "[d]on't move. You niggers gonna die tonight."

Both Oliver and Jerome were forced to take off their clothes. Defendant Bryant hit Oliver in the head with a gun after Oliver asked what was going on. Oliver was forced into the trunk of the Intrepid, and Jerome was forced into the trunk of the Neon. In an attempt to get out of the trunk, Oliver put his leg out. While his leg was hanging out, Defendant Bryant closed the trunk on Oliver's leg, breaking it. With Defendant Ezell driving the Neon, the group left the area and drove to a different area of town. Here, Defendant Ezell took Tonyell Somerville's jewelry, cash, and purse. Defendant Ezell then ordered Tonyell and her son, Jodeci, out of the Neon. Before Tonyell left the car, however, Defendant Ezell told her to handover her identification. After Tonyell complied, Defendant Ezell told her that "we've got your ID, we have your address, we know where you live, we know what you look like. If we get

-3-

caught, if we go to jail, if you call the police, we'll come back and kill you and your son." In the meantime, Jerome was taken out of the Neon's trunk and placed in the Intrepid's trunk with Oliver. A short time later, Kimberly was dropped off near her mother's house. Before being released, she was threatened with death if she called the police. However, both Kimberly and Tonyell called the police after being released.

Meanwhile, the defendants returned to the house with Jerome and Oliver. The defendants, along with the other assailants, placed Oliver and Divin in the middle of the floor and beat them with their fists and guns. Defendant Ezell also struck Omar in the back of the head with his shotgun. In addition to being beaten, Oliver was burned with cigarettes and Divin was burned after being tossed headfirst into a fireplace. The defendants then poured bleach on Oliver, Divin, Omar, and Jerome. The defendants informed these men that they would be taken to Mississippi and killed; whereupon, the defendants forced the men once again into the trunks of their vehicles and started driving toward Mississippi. However, shortly after leaving the house, police officers initiated pursuit, which led to the release of the four men from the confines of the trunks and the eventual arrest of the defendants.

State v. Torrez Talley, Jevon Bryant, and Keith Ezell, No. W2003-02237-CCA-R3-CD, Shelby County (Tenn. Crim. App. Oct. 16, 2006), app. denied (Tenn. Mar. 19, 2007).

On direct appeal, the Petitioner's attorney raised the following issues: (1) whether the trial court erred in denying the request for a mistrial after a prospective juror made statements about his sister-in-law's kidnapping and murder; (2) whether the trial court erred in allowing the State to present the Petitioner's twin brother to the jury in order to rehabilitate a State's witness who initially identified the Petitioner's brother in a lineup as one of the perpetrators; (3) whether the trial court failed to properly instruct the jury about reasonable doubt; and (4) whether the trial court violated the Sixth Amendment and the holding of Blakely v. Washington, 542 U.S. 296 (2004), in imposing consecutive sentences. The Petitioner's co-defendants raised additional issues regarding: (1) denial of a motion to suppress; (2) violations of the proper use of peremptory challenges pursuant to Batson v. Kentucky, 476 U.S. 79 (1986); (3) election of offenses related to co-defendant Bryant's handgun possession charge; (4) rehabilitation of two State's witnesses using an uncertified transcript of the preliminary hearing; (5) a police officer's statement of opinion about the guilt of co-

-4-

defendant Bryant; (6) prosecutorial misconduct during closing argument; (7) the amount of time afforded trial counsel for co-defendant Bryant to review the jury instructions; (8) the jury instruction regarding a defendant's right not to testify; (9) the lack of an instruction on false imprisonment as a lesser included offense of especially aggravated kidnapping; and (10) the sentences imposed on the Petitioner's co-defendants. This court denied relief on all of these issues and affirmed the convictions, but it remanded the case for merger of the defendants' fourteen kidnapping convictions into seven offenses. As noted, the Tennessee Supreme Court denied the defendants' applications for permission to appeal. Id.

The Petitioner filed a pro se post-conviction petition. The trial court appointed counsel, who filed an amended petition. The pro se petition and the amended petition raised several alleged factual instances of ineffective assistance of counsel, as well as other issues. The trial court denied relief on all of the Petitioner's issues. In this appeal, the Petitioner has pursued only his claim that counsel was ineffective for not giving him complete advice about the State's plea offer.

Pertinent to the issue raised on appeal, the Petitioner testified at the post-conviction hearing that he was serving an effective sentence of 198 years but was offered a plea bargain for forty years during the trial. He said he met with his attorney twice before the trial and had no other form of communication with counsel. He said that his attorney gave him the discovery materials but that his attorney never reviewed the material with him. He said his attorney did not discuss his charges or his co-defendants' charges with him. He said his trial counsel did not discuss the evidence as it developed during the trial. He denied that trial counsel ever discussed evidence that could have been favorable to the defense.

The Petitioner denied that his trial attorney ever advised him regarding the range of punishment for the charged offenses. He said trial counsel never told him that his sentences could be increased based upon enhancement factors. He said that if he understood at the time the type of sentences he might receive, he would have "sign[ed] up for something less than a hundred years." When asked whether he "would have been willing to entertain a plea option possibly," he replied, "Right." He said there was no discussion of a plea agreement until the trial. He said that trial counsel told him the State had offered a forty-year plea agreement but that he rejected it. He said he viewed it as a life sentence. He said that had trial counsel advised him that he was facing a possible 198-year or higher sentence if he went to trial instead of accepting the forty-year plea offer, "I probably wouldn't have went to trial." He said that the State offered him a forty-year plea agreement almost every day of trial and that the sentence in the offer never decreased.

The Petitioner denied that trial counsel explained the proof required to convict him of the charged offenses or the lesser included offenses. He said that he now understood the

State "probably" had sufficient evidence to convict him and that had he understood this at the time, it would have affected his decision to go to trial.

On cross-examination, the Petitioner acknowledged that the forty years in the plea offer was a long time but said he was unaware that he could receive 190 years if convicted. He said he "might" have agreed to the forty-year sentence if he understood that the sentence could have been much longer. The Petitioner acknowledged that he received a shorter sentence than two of his co-defendants.

On examination by the court, the Petitioner testified that had he known he might receive consecutive sentences, "I'd gave it [the forty-year plea offer] some thought, then." He said no one, including the judge who arraigned him, advised him on the range of punishment.

Trial counsel testified that there were five or six individuals charged and that there were two trials. He said the Petitioner was tried with two of his co-defendants after the trial for the other co-defendants. Trial counsel testified that he met with the Petitioner at the jail and on the days of court hearings. He said his defense of the Petitioner was based upon the misidentification of the Petitioner's twin brother as the perpetrator.

Trial counsel testified that he explained consecutive sentencing to the Petitioner. He recalled that one of the co-defendants received a 634-year sentence in the earlier trial. He said he remembered discussing consecutive sentencing with the Petitioner in reference to the 634-year sentence. He said the Petitioner was offered a forty-year plea offer, that he thought the Petitioner was questioned about rejecting it, and that the Petitioner was later offered a thirty-year plea offer. He said that he and trial counsel for the co-defendants discussed the thirty-year offer with the Petitioner. He recalled stressing that the judge had already shown a willingness to use consecutive sentences by giving one of the co-defendants 634 years. He said, "I remember saying thirty years, I know that's a hard pill to swallow." He said he thought the Petitioner's potential sentence was as much as 210 years. He said he did not know how he could have made it clearer to the Petitioner.

On examination by the court, trial counsel testified that he was sure he discussed the Petitioner's sentencing exposure with him. He said, "[T]he reason I remember that was his co-defendant in particular got so many years. I wanted to make sure he understood it would be consecutive, and I'm almost positive we voir dired him on it with the Judge before when we set it for trial." He estimated that he met with the Petitioner three or four times at the jail and every time there was a court date. He said he thought there were more than ten court dates. He acknowledged discussing trial strategy and the State's theories with the Petitioner.

The trial court made findings of fact at the conclusion of the hearing. With respect to the issue raised in this appeal, the court found:

> [Trial counsel] met with [the Petitioner] at least a couple of times prior to trial in the jail, and sometimes on the court dates he went into more detail about [the information he obtained during trial preparation] . . . . [H]e met with [the Petitioner] and thoroughly discussed . . . the issues, the strategies that were to be presented different from what [the Petitioner said] about the offers that were made during trial.
>
> [Trial counsel] seems to remember very well the fact that there was a forty year offer initially but then during trial they even cut the offer to thirty years and he explained [it] to [the Petitioner]. And the reason he remembers it is because someone else got consecutive sentencing, a 600 year sentence, and he spoke with [the Petitioner] about the exposure [the Petitioner] could receive. And so I'll have to credit his testimony in that regard.

The court found that the Petitioner failed to carry his burden of establishing his claims by clear and convincing evidence and denied relief. The court later filed a written order denying relief, in which the court made the additional finding, "Petitioner's testimony regarding his numerous complaints is self-serving and not credible."

On appeal, the Petitioner contends that he demonstrated by clear and convincing evidence that trial counsel was ineffective because counsel did not advise him he should accept the State's plea offer. The State contends that the trial court properly denied relief. We hold that the Petitioner has not shown that he is entitled to relief.

The burden in a post-conviction proceeding is on the Petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Fields, 40 S.W.3d at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, in order to prove prejudice, a petitioner "'must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" House v. State, 44 S.W.3d 508, 516 (Tenn. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Our supreme court has held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See id. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

To support his claim that trial counsel did not advise him adequately because he did not understand the likelihood that he would be convicted or that he faced consecutive sentences, the Petitioner relies on the transcript of the voir dire hearing regarding the plea offer that took place before the trial. After appealing to this court, the Petitioner filed a motion to supplement the record in this case with the record from his direct appeal. A judge of this court denied the motion, noting that the policy of this court was not to supplement the record of a pending appeal with the record of a closed, archived case. The order stated, however, that the court would take judicial notice of the earlier record and that the parties

could cite to the earlier record in their briefs. <u>Keith Ezell v. State</u>, No. W2010-00698-CCA-R3-PC, Shelby County (Tenn. Crim. App. Nov. 8, 2010) (order).

The record of the Petitioner's conviction proceedings reflects that at the voir dire hearing on the plea offer, the following took place:

> [Trial counsel] Q: All right. State your name for the court, please.
>
> A: Keith Ezell.
>
> Q: Okay. Mr. Ezell, we've discussed all the charges against you, and we've gone over the discovery in this matter so far, have we not?
>
> A: Right.
>
> Q: Okay. And in fact the last time we set this matter for trial, do you remember receiving an offer of forty years?
>
> A: Right.
>
> Q: And we discussed that; we discussed your case again; and I've told you that you have, basically seven cases that could carry fifteen – in your range, fifteen to twenty-five years.
>
> A: Right.
>
> Q: And then you have several others that carry eight to thirty – eight to twelve in your range because you're Range I. We've discussed that, have we not?
>
> A: Right.
>
> Q: And after doing that and going over the facts of this case and whatever, and again today, you were given that offer, were you not?
>
> A: Right.

Q:      And we sat around, and all of us discussed it, and we came to the same conclusion that you wanted to reject that offer.

A:      Right.

Q:      Is that still the way you feel about it as of right now?

A:      Right.

Trial counsel:      That's all I have, your honor.

The Petitioner also notes that the trial record does not contain any further voir dire of the Petitioner once the offer was reduced to thirty years and that the trial record contains only trial counsel's reference to a discussion of the offer that included trial counsel, the co-defendants' attorneys, and the Petitioner.

At the post-conviction hearing, the Petitioner testified that trial counsel never advised him that he faced the possibility of consecutive sentences far exceeding the sentences associated with the plea offers. He said that trial counsel never explained the State's theory of the case, the evidence, or the elements of the offenses. Trial counsel contradicted the Petitioner's testimony, stating that he explained the Petitioner's sentencing exposure. He recalled discussing a co-defendant's 634-year sentence with the Petitioner. Trial counsel said he met with the Petitioner and explained the State's theory, the elements of the charged offenses, and the evidence he gained in trial preparation. The trial court's findings accredited the testimony of counsel and discredited the Petitioner's testimony.

Upon review, we conclude that the evidence does not preponderate against the trial court's factual findings. The court accredited the testimony of trial counsel that he explained the Petitioner's sentencing exposure, the elements of the offenses, the State's theory, and the possible defenses, over the contrary testimony of the Petitioner. We note that the transcript of the voir dire hearing of the Petitioner from the direct appeal record reflects that the Petitioner acknowledged that trial counsel explained the charges, the evidence, and the sentences the Petitioner faced. Although the trial record does not specifically address whether the Petitioner recalled trial counsel's explaining consecutive sentences to him, nothing in the trial record calls into question the trial court's finding at the post-conviction hearing that trial counsel's testimony that he did so was credible. The Petitioner has not shown that trial counsel's performance was deficient.

Likewise, we conclude that the Petitioner failed to establish that trial counsel's performance was prejudicial. We note that the Petitioner's testimony at the post-conviction

hearing was equivocal when he was asked whether he would have pled guilty if he understood the likelihood of conviction and the lengthy sentence he faced. The Petitioner said that he "probably" would not have gone to trial and that he would have "[given] it [the plea agreement] some thought." Given the trial court's finding that the Petitioner's testimony was not credible and the Petitioner's failure to state unequivocally that he would have accepted the plea agreement had he understood the likelihood of conviction and a lengthy sentence if he went to trial, we conclude from the proof that the Petitioner did not show prejudice.

The Petitioner failed to establish that trial counsel performed deficiently and that he was prejudiced by the performance. The trial court properly denied the Petitioner's claim for post-conviction relief based upon ineffective assistance of counsel. In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE